**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| **CYPH, Inc.**,<br>2093A Philadelphia Pike, Suite 152,<br>Claymont, DE 19703<br><br>Plaintiff,<br><br>v.<br><br>**Zoom Video Communications, Inc.**,<br>7601 Technology Way, Suite 300<br>Denver, Colorado 80237<br><br>Defendant. | Case No.:<br><br>**COMPLAINT FOR PATENT INFRINGEMENT**<br><br>**TRIAL BY JURY DEMANDED** |

## COMPLAINT

COMES NOW, Plaintiff Cyph, Inc. ("Cyph" or "Plaintiff"), by and through his attorneys of record, Carl Brundidge and David Moore of Brundidge & Stanger, P.C., files this Complaint against Defendant Zoom Video Communications, Inc. ("Zoom" or "Defendant"). For its Complaint against Defendant, Plaintiff alleges as follows:

## PARTIES

1. CYPH is a small company incorporated in the state of Delaware. CYPH's principal place of business is located at 2093A Philadelphia Pike, Suite 152, Claymont, DE 19703.

2. Zoom is a publicly traded video communications and online media company, organized under the laws of Delaware, with a principal place of business at 55 Almaden Boulevard – 6th floor, San Jose, California, 95113 and an Office located at 7601 Technology Way, Suite 300, Denver, Colorado 80237. Zoom provides a video communications platform to anyone with internet access, around the world. Since the beginning of coronavirus pandemic in January 2020, Zoom's

subscription and sales volume spiked to produce 2500% growth of net income in 2020.[1] Zoom's corporation value has soared to pass that of ExxonMobil.

## NATURE OF THE ACTION

3. This is a civil action for Zoom's infringement of U.S. Patent No. 9,948,625 B2 (the "'625 Patent"), U.S. Patent No. 10,701,047 (the "'047 Patent"), U.S. Patent No. 10,020,946 (the "'946 Patent"), U.S. Patent No. 9,794,070 (the "'070 Patent"), U.S. Patent No. 10,003,465 (the "'465 Patent"), and U.S. Patent No. 9,906,369 (the "'369 Patent") (collectively referred to as the "Asserted Patents"), which are attached hereto as Exhibits A, B, C, D, E, and F, respectively, and incorporated herein by reference, and pursuant to 35 U.S.C. §271, and to recover damages, attorney's fees, and costs.

## JURISDICTION AND VENUE

4. This is an action for patent infringement in violation of the Patent Act of the United States, Title 35 of the United States Code §§100, *et seq*.

5. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§1331 and 1338(a).

6. This Court has personal jurisdiction over Zoom, by virtue of both general and specific personal jurisdiction. First, Zoom is incorporated in Delaware, and has an Office in this jurisdiction at 7601 Technology Way, Suite 300, Denver, Colorado 80237. Zoom's continuous and systematic activities within this jurisdiction gives rise to the required level of contact for general personal

---

[1] Zoom's userbase skyrocketed from 10 million in December 2019 to 300 million in April 2020. *FTC Requires Zoom to Enhance its Security Practices as Part of Settlement*, FTC (Nov. 9, 2020), https://www.ftc.gov/news-events/press-releases/2020/11/ftc-requires-zoom-enhance-its-security-practices-part-settlement.

jurisdiction. Second, upon information and belief, Zoom's activities are purposefully directed to video communication platform users in this district, infringing the Asserted Patents, and causing irreparable harm to CYPH, constituting a substantial part of the cause of this action. Zoom is not prejudiced any way being sued in this district.

7. Venue is proper in this district pursuant to 28 U.S.C. § 1400(b) because Zoom resides in this District at 7601 Technology Way, Suite 300, Denver, Colorado 80237 in accordance with the Supreme Court's opinion in *TC Heartland v. Kraft Foods Group Brands LLC*, 137 S. Ct. 1514 (2017). Moreover, a substantial part of the events giving rise to CYPH's claims occurred out of Zoom's regular and continuous activities in this district.

## TECHNOLOGY OF CYPH

8. The confidentiality of sensitive information and the protection of constituents' privacy are pillars of modern communication and to the governance of organizations. A data breach incident can destroy the affected entity's trade secrets, disrupt its internal business operations, and destroy relationships with affiliates and clients.

9. The European Union's General Data Protection Regulation (GDPR) symbolizes the criticality of data protection in modern times. "Your company's sensitive data should be encrypted both in transit and at rest. Both Recital 83 and Article 32 of the GDPR explicitly mention 'encryption' when discussing appropriate technical and organizational security measures."[2] To transact with trusted entities, or operate in European countries or with European citizens, one must comply with stringent data security requirements of GDPR and applicable other local regulations.

[2] PROTON TECHS. AG, DATA PROTECTION AND WORKING REMOTELY, GDPR.EU, https://gdpr.eu/working-remotely-data-security/ (last visited Aug. 29, 2021).

10. End-to-end encryption ("E2EE") technology is a technology that provides stronger privacy protection because it allows individual members of a dialogue to encrypt their message to others and decrypt a message to them without intervention of a system administrator. E2EE is an essential component in confidential online meetings.

11. The superior data security, however, may require massive calculation and corresponding computer processing speed.

12. While communication tools may run smoothly on computers with high performing CPUs, a platform is inclusive, and should be open to everyone. Encryption offerings by CYPH and Zoom are used in everyday environments, where such offerings may operate on a limited-capability computer.

13. Prior to the disclosures of the Asserted Patents, multi-participant discussion did not exist in a practical manner when E2EE is required. This applies even more to today's large-scale group communications because of the sheer speed and the amount of exchanged data among hundreds of participants.

14. Companies like Zoom could not have provided E2EE technologies without practicing CYPH's inventions as recited in the claims of the Asserted Patents.[3]

15. CYPH was founded by Ryan Lester and Josh Boehm in 2014 as a provider of encrypted communications and media company.

16. Using the knowledge and expertise that CYPH's founders had obtained through their careers, CYPH invented the best solution to E2EE-enabled communication and media platform,

[3] Since at least 2016, Zoom misrepresented the security of Zoom Products as backed by "end-to-end, 256-bit encryption." *FTC Requires Zoom to Enhance its Security Practices as Part of Settlement*, FTC (Nov. 9, 2020), https://www.ftc.gov/news-events/press-releases/2020/11/ftc-requires-zoom-enhance-its-security-practices-part-settlement.

which allows uncensored communications and information exchanges. As described in the Asserted Patents, CYPH's encrypted group communication is founded upon the unique and creative approach that had not been pursued by other entities.

17. CYPH has launched its unprecedented E2EE communication platform by incorporating the patented E2EE technologies into its proprietary communication system. CYPH safely connects privacy conscious users and broadens user communications. CYPH truly secured space to connect, share, and communicate with others.

## ASSERTED PATENTS

18. On April 17, 2018, the United States Patent and Trademark Office ("USPTO") duly and legally issued the `625 Patent entitled "Encrypted Group Communication Method."

19. On June 30, 2020, the USPTO duly and legally issued the `047 Patent entitled "Encrypted Group Communication Method." The `047 Patent was issued from a continuation application of the application (Serial No. 14/841,281) from which the `625 Patent was issued.

20. On July 10, 2018, the USPTO duly and legally issued the `946 Patent entitled "Multi-key Encryption Method."

21. On October 17, 2017, the USPTO duly and legally issued the `070 Patent entitled "Method of Ephemeral Encrypted Communications."

22. On June 19, 2018, the USPTO duly and legally issued the `465 Patent entitled "A System and Method of Encrypting Authentication Information."

23. On February 27, 2018, the USPTO duly and legally issued the `369 Patent entitled "A System and Method of Cryptographically Signing Web Applications."

24. The Asserted Patents were issued after the USPTO completed a full and fair examination.

25. The Asserted Patents are valid and enforceable.

26. CYPH is the current owner of the Asserted Patents.

27. CYPH owns all rights and interests in the Asserted Patents, including the exclusive right to recover for past, present, and future infringement.

28. CYPH has complied with all marking requirements under 35 U.S.C. § 287 with respect to the Asserted Patents (*see* www.cyph.com/patents).

## ZOOM'S PRODUCTS AND SERVICES

29. Zoom offers for sale, sells, and solicits users to download, application software for Zoom's communication services ("Zoom Apps") for its Zoom Meetings, Zoom Marketplace, Zoom Video Webinars, Zoom Chat, Zoom Phone System, Zoom Events, Zoom Rooms and Workspaces, Zoom Developer Platform ("Zoom Products"). Zoom Apps are available for download at app stores and Zoom's official website.

30. Zoom offers and sells to individuals and businesses various hardware devices ("Zoom Devices") configured to operate Zoom Products.

31. Zoom users can participate in Zoom Products, using Zoom Apps, using Zoom Devices, or through a standard web browser.

32. Zoom offers and sells to individuals and businesses various monthly subscription packages ("Zoom Plans").

33. Subscribers of Zoom Plans can initiate Zoom Products as a host and/or enjoy broader functions than non-subscriber users,[4] including E2EE enabled communication, and gain higher control over the use of Zoom Products.

---

[4] For example, a host can invite more than 100 participants to join a meeting, can selectively invite participants via email, IM, or SMS, can create the meeting to only allow members from a certain domain email to join. https://zoom.us/docs/doc/Zoom-Security-White-Paper.pdf.

34. On July 31, 2021, Zoom agreed to pay $85 million to settle a class action where Zoom misled its users about the encryption security, sharing data through third-party integrations without adequate notice or consent, and failure to protect private meetings from nefarious users of the Zoom platform (so-called "Zoom-bombers').

35. In spite of the claimed E2EE-supported products and services, Zoom failed to employ E2EE. Instead, Zoom mislead the public and permitted third-party software development kits to collect user data.

36. The `625 Patent contains two claims including one independent claim (Claim 1) and one dependent claim.

37. A non-limiting and exemplary claim chart comparing Zoom Products to Claims 1, 2 of the `625 Patent is attached hereto as Exhibit G and is incorporated herein as if fully rewritten.

38. Upon information and belief, Zoom makes, sells, offers to sell, uses, and import Zoom Products, which infringe at least Claim 1 of the `625 Patent.

39. Zoom Products practices a method comprising: generating a shared symmetric key to begin a communication session among a group of users by a first user; distributing by the first user, the generated shared symmetric key to each user in the group of users; communicating within the communication session among a group of users, wherein each user encrypts a message to the group of users to be distributed through the communication session using the generated shared symmetric key, and each user decrypts a message received from the communication session using the generated shared symmetric key; wherein additional users are added to the existing communication session when the first user distributes to the additional users the generated shared symmetric key.

40. As recited in a step of Claim 1 of the `625 Patent, Zoom Products, for example, Zoom's web meeting system, Zoom online meeting via Zoom Apps, Zoom chats, and webinar program,

are responsible for generating a shared symmetric key to begin a communication session among a group of users by a first user. *See* Exhibit G.

41. As recited in remaining steps of Claim 1 of the `625 Patent, Zoom Products, for example, Zoom's web meeting system, Zoom online meeting via Zoom Apps, Zoom chats, and webinar program, are responsible for distributing by the first user, the generated shared symmetric key to each user in the group of users; communicating within the communication session among a group of users. *See* Exhibit G.

42. As recited in Claim 1 of the `625 Patent, in Zoom Products, each user encrypts a message to the group of users to be distributed through the communication session using the generated shared symmetric key, each user decrypts a message received from the communication session using the generated shared symmetric key.

43. As recited in Claim 1 of the `625 Patent, in Zoom Products, additional users are added to the existing communication session, when the first user distributes to the additional users the generated shared symmetric key. *See* Exhibit G.

44. As recited in one step of Claim 2 of the `625 Patent, Zoom Products, for example, Zoom's web meeting system, Zoom online meeting via Zoom Apps, Zoom chats, and webinar program, are responsible for the further step of changing users within the group of users to reform the communication session among a new group of users, comprising: generating a new shared symmetric key by the first user; distributing, by the first user, the generated new shared symmetric key to each user in the new group of users; communicating to the communication session among a new group of users. *See* Exhibit G.

45. As recited in Claim 2 of the `625 Patent, in Zoom Products, each user encrypts a message to the new group of users to be distributed through the communication session using the generated

new shared symmetric key, each user decrypts a message received from the communication session using the generated new shared symmetric key. *See* Exhibit G.

46. The `047 Patent contains four claims including one independent claim (Claim 1) and three dependent claims.

47. A non-limiting and exemplary claim chart comparing Zoom Products to Claims 1 through 4 of the `047 Patent is attached hereto as Exhibit H and is incorporated herein as if fully rewritten.

48. Upon information and belief, Zoom makes, sells, offers to sell, uses, and import Zoom Products, which infringe at least Claims 1, 2, 3, and 4 of the `047 Patent.

49. Zoom Products practices a method comprising: generating a shared symmetric key to begin a communication session among a group of users by a first user wherein the first user is the user initiating the group communication session and wherein the communication session is a long-lived session; distributing by the first user, the generated shared symmetric key to each user in the group of users; communicating within the communication session among a group of users. *See* Exhibit H.

50. As recited in Claim 1 of the `047 Patent, in Zoom Products, each user encrypts a message to the group of users to be distributed through the communication session using the generated shared symmetric key, and each user decrypts a message received from the communication session using the generated shared symmetric key. *See* Exhibit H.

51. As recited in Claim 1 of the `047 Patent, in Zoom Products, each encrypted group communication comprises a short-lived secure communication session. *See* Exhibit H.

52. As recited in steps of Claim 2 of the `047 Patent, Zoom Products, for example, Zoom's web meeting system, Zoom online meeting via Zoom Apps, Zoom chats, and webinar program, are responsible for the further steps of changing users within the group of users to reform the

communication session among a new group of users, comprising: generating a new shared symmetric key by the first user; distributing, by the first user, the generated new shared symmetric key to each user in the new group of users. *See* Exhibit H.

53. As recited in a step of Claim 3 of the `047 Patent, Zoom Products, for example, Zoom's web meeting system, Zoom online meeting via Zoom Apps, Zoom chats, and webinar program, are responsible for the further step of communicating to the communication session among a new group of users. *See* Exhibit H.

54. As recited in Claim 3 of the `047 Patent, in Zoom Products, each user encrypts a message to the new group of users to be distributed through the communication session using the generated new shared symmetric key, and each user decrypts a message received from the communication session using the generated new shared symmetric key. *See* Exhibit H.

55. As recited in Claim 4 of the `047 Patent, in Zoom Products, additional users are added to the communication session by distributing the generated shared symmetric key to the additional users. *See* Exhibit H.

56. The `946 Patent contains one independent claim (Claim 1).

57. A non-limiting and exemplary claim chart comparing Zoom Products to Claim 1 of the `946 Patent is attached hereto as Exhibit I and is incorporated herein as if fully rewritten.

58. Upon information and belief, Zoom makes, sells, offers to sell, uses, and import Zoom Products, which infringe at least Claim 1 of the `946 Patent.

59. Zoom Products practices a method comprising: downloading, by a client computing device, an encrypted data block from a server, wherein the encrypted data block includes a server-stored symmetric key; and decrypting, by the client computing device, the encrypted data block with a previously stored symmetric key that is stored locally to retrieve the server-stored symmetric key

from the encrypted data block, generating a new shared-symmetric key; creating a new encrypted data block comprising the new shared-symmetric key and transmitting the new encrypted data block to the server.

60. As recited in Claim 1 of the `946 Patent, in Zoom Products, the server storing the sever-stored symmetric key: encrypts a message before transmitting a message to it's intended recipient, and decrypts a received message, wherein the server decrypts the new encrypted data block and overwrites the server-stored symmetric key with the new shared-symmetric key. *See* Exhibit I.

61. The `070 Patent contains one independent claim (Claim 1) and one dependent claim.

62. A non-limiting and exemplary claim chart comparing Zoom Products to Claims 1, 2 of the `070 Patent is attached hereto as Exhibit J and is incorporated herein as if fully rewritten.

63. Upon information and belief, Zoom makes, sells, offers to sell, uses, and import Zoom Products, which infringe at least Claim 1 of the `070 Patent.

64. Zoom Products practices a method comprising: sending a request, by a first user on a first device, to a server, the request comprising requesting the server open an ephemeral communication session with a second user on a second device; allocating resources, by the server, to begin the ephemeral communication session between the first user and the second user; generating a unique ephemeral communication session identifier by the server for each ephemeral communication session and transmitting the unique ephemeral communication session identifier to the first user; transmitting, by the first user, the unique ephemeral communication session identifier to the second user using a second communication channel; connecting, by the second user, to the first user through the ephemeral communication session using the unique ephemeral communication session identifier; and connecting, by the first user, to the second user through the ephemeral

communication session using the unique ephemeral communication session identifier. *See* Exhibit J.

65. As recited in steps of Claim 2 of the `070 Patent, Zoom Products, for example, Zoom's web meeting system, Zoom online meeting via Zoom Apps, Zoom chats, and webinar program, are responsible for the further steps of connecting, by the second user, to the first user through the ephemeral communication session includes connecting to the server; and connecting, by the first user, to the second user through the ephemeral communication session includes connecting to the server. *See* Exhibit J.

66. The `465 Patent contains three independent claims (Claims 1, 8, 15) and fifteen dependent claims.

67. A non-limiting and exemplary claim chart comparing Zoom Products to Claims 1, 6, and 17 of the `465 Patent is attached hereto as Exhibit K and is incorporated herein as if fully rewritten.

68. Upon information and belief, Zoom makes, sells, offers to sell, uses, and import Zoom Products, which infringe at least Claim 1 of the `465 Patent.

69. Zoom Products practices a method comprising: generating a shared symmetric key, using an integrated circuit chip, to exchange authentication information among a communications group; distributing the generated shared symmetric key to each communicating party in the communications group; exchanging authentication information among members of the communications group. *See* Exhibit K.

70. As recited in Claim 1 of the `465 Patent, in Zoom Products, each communicating party: encrypts the authentication information using the generated shared symmetric key and sends the encrypted authentication information to other members of the communications group and receives the encrypted authentication information from another communicating party in the

communications groups and decrypts the received encrypted authentication information using the generated shared symmetric key. *See* Exhibit K.

71. As recited in Claim 1 of the `465 Patent, in Zoom Products, additional users are added to a communication session when a first user distributes to the additional users the generated shared symmetric key.

72. As recited in Claim 1 of the `465 Patent, in Zoom Products, generating a shared symmetric key to exchange authentication information among a communications group is generated using out-of-band communications received through a communication interface. *See* Exhibit K.

73. As recited in a step of Claim 6 of the `465 Patent, Zoom Products, for example, Zoom's web meeting system, Zoom online meeting via Zoom Apps, Zoom chats, and webinar program, are responsible for the further step of initiating the communications session within the communications group using the exchanged authentication information. *See* Exhibit K.

74. As recited by Claim 17 of the `465 Patent, Zoom Products operate on a system to exchange authentication information, comprising a processor and a memory operatively coupled to the processor. *See* Exhibit K.

75. As recited by Claim 17 of the `465 Patent, in Zoom Products, the processor is configured to generate a shared symmetric key, using an integrated circuit chip, to exchange authentication information among a communications group; transmit the generated shared symmetric key to each communicating party in the communications group; exchange authentication information among members of the communications group. *See* Exhibit K.

76. As recited by Claim 17 of the `465 Patent, in Zoom Products, each communicating party: encrypts the authentication information using the generated shared symmetric key and sends the encrypted authentication information to other members of the communications group and receives

the encrypted authentication information from another communicating party in the communications groups and decrypts the received encrypted authentication information using the generated shared symmetric key. *See* Exhibit K.

77. As recited by Claim 17 of the `465 Patent, in Zoom Products, additional users are added to the communication session when a first user distributes to the additional users the generated shared symmetric key. *See* Exhibit K.

78. As cited by Claim 17 of the `465 Patent, in Zoom Products, generating a shared symmetric key to exchange authentication information among a communications group is generated using out-of-band communications received through a communication interface. *See* Exhibit K.

79. As cited by Claim 17 of the `465 Patent, in Zoom Products, initiating the communications session within the communications group using the exchanged authentication information fails unless each communicating party in the communications group successfully decrypts the received encrypted authentication information. *See* Exhibit K.

80. The `369 Patent contains two independent claims (Claims 1, 7) and ten dependent claims.

81. A non-limiting and exemplary claim chart comparing Zoom Products to Claims 1, 5 of the `369 Patent is attached hereto as Exhibit L and is incorporated herein as if fully rewritten.

82. Upon information and belief, Zoom makes, sells, offers to sell, uses, and import Zoom Products, which infringe at least Claim 1 of the `369 Patent.

83. Zoom Products, accessed through a website, practices a method comprising: receiving, at a client-side web browser, a minimal bootstrap payload from an application server; storing, by the client-side processor, the minimal bootstrap payload in the client-side local cache. *See* Exhibit L.

84. As cited by Claim 17 of the `369 Patent, in Zoom Products, accessed through a website, the locally cached minimal bootstrap payload is executed by the client-side processor before executing an application from the application server. *See* Exhibit L.

85. As cited by Claim 17 of the `369 Patent, in Zoom Products, accessed through a website, the minimal bootstrap payload includes at least one public key, at least one Uniform Resource Location (URL) address of an application code payload, a second URL and a backup URL. *See* Exhibit L.

86. As cited by Claim 17 of the `369 Patent, in Zoom Products, accessed through a website, the client-side processor executes the minimal bootstrap payload, which comprises: receiving, at the client-side web browser, the application code payload from the URL specified by the minimal bootstrap payload, wherein the received application code payload includes a cryptographic signature that was generated using a private key associated with a public key specified by the minimal bootstrap payload; verifying, by the client-side processor, the received application code payload cryptographic signature using a locally stored public key; executing, by the client-side processor, the received application code payload after the received application payload has been successfully verified; receiving a cryptographically signed pre-computed hash from the second URL, verifying, by the client-side processor, the received pre-computed hash using a locally stored public key; storing, by the client-side processor, in the client-side local cache a copy of the verified pre-computed hash with or without its associated signature; and receiving a backup application code payload from a backup URL when the minimal bootstrap payload fails to verify the received application code payload cryptographic signature using a locally stored public key. *See* Exhibit L.

87. As recited in a step of Claim 5 of the `369 Patent, Zoom Products, for example, Zoom's web meeting system through a website, Zoom chats and webinar program through a website, are

responsible for the further step of the minimal bootstrap payload, computing, by the client-side processor, a hash of the received application code payload. *See* Exhibit L.

**CLAIM FOR RELIEF**

88. The causes of action arise under the patent laws of the United States and, in particular under 35 U.S.C. §§ 271, *et seq*.

**COUNT 1: Direct Infringement of the Asserted Patents**

89. CYPH realleges and incorporates by reference all of the allegations set forth in the preceding paragraphs.

90. Zoom has knowledge of its infringement of the Asserted Patents at least upon the receipt of CYPH's October 28, 202 letter "Re.: U.S. Patents Owned by Cyph, Inc." and the service of this Complaint at the latest. *See* Exhibit M.

91. By engaging in the conduct described herein, Zoom is infringing and has directly infringed at least Claims 1, 2 of the `625 Patent, Claims 1, 2, 3, and 4 of the `047 Patent, Claim 1 of the `946 Patent, Claims 1, 2 of the `070 Patent, Claims 1, 6, and 17 of the `465 Patent, Claims 1, 5 of the `369 Patent (collectively, "Asserted Claims"), literally or under the doctrine of equivalents, in violation of 35 U.S.C. § 271(a).

92. Zoom generates profits by designing, making, selling, offering to sell, using, or importing Zoom Products, Zoom Apps, and Zoom Devices that literally infringe the Asserted Claims or infringe the Asserted Claims under the doctrine of equivalents.

93. Zoom has committed these acts of infringement without license or authorization.

94. As a result of Zoom's infringement of the Asserted Claims, CYPH has suffered monetary damages and is entitled to a monetary judgment in an amount adequate to compensate for Zoom's past infringement, together with interests and costs, pursuant to 35 U.S.C. § 284.

95. CYPH will continue to suffer damages unless Zoom's infringing activities are enjoined by this Court. Thus, CYPH is entitled to compensation for any continuing infringement until Zoom permanently ceases further infringement.

96. CYPH will be materially and irreparably harmed if Zoom is not enjoined from infringing the Asserted Patents.

97. Zoom's continuing acts of infringement are willful, entitling CYPH to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

**COUNT 2: Induced Infringement of the Asserted Patents**

98. CYPH realleges and incorporates by reference all of the allegations set forth in the preceding paragraphs.

99. By engaging in the conduct described herein and encouraging infringement, Zoom is inducing and has induced others, including its customers, to infringe each of the Asserted Claims of the Asserted Patents, literally or under the doctrine of equivalents, knowing that the acts that Zoom induced constituted patent infringement, and its encouraging acts actually resulted in direct infringement of the Asserted Patents, in violation of 35 U.S.C. § 271(b).

100. Zoom generates profits by inducing the direct infringement of the Asserted Claims.

101. Zoom has committed these acts, without license or authorization.

102. As a result of Zoom's induced infringement of the Asserted Claims, CYPH has suffered monetary damages and is entitled to a monetary judgment in an amount adequate to compensate for Zoom's past induced infringement, together with interests and costs, pursuant to 35 U.S.C. § 284.

103. CYPH will continue to suffer damages in the future unless Zoom's infringing activities are enjoined by this Court. Thus, CYPH is entitled to compensation for any continuing infringement until Zoom permanently ceases further induced infringement.

104. CYPH will be materially and irreparably harmed if Zoom is not enjoined from infringing the Asserted Patents.

105. Zoom's continuing acts of infringement are willful, entitling CYPH to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

**COUNT 3: Contributory Infringement of the Asserted Patents**

106. CYPH realleges and incorporates by reference all of the allegations set forth in the preceding paragraphs.

107. By engaging in the conduct described herein, Zoom has contributed and continues to contribute, to others' infringement of each of the Asserted Claims of the Asserted Patents, knowing that the others' acts constituted patent infringement, and their acts actually resulted in direct infringement of the Asserted Patents, in violation of 35 U.S.C. § 271(c).

108. Upon information and belief, at least videoconferencing, chat, webinar, and data exchange functions of the Zoom Apps and Zoom Devices constitute a material part of the Asserted claims and are not staple articles or commodities of commerce suitable for substantial non-infringing use.

109. Zoom generates profits by contributing to the direct infringement of the Asserted Claims.

110. Zoom has committed these acts of infringement without license or authorization.

111. As a result of Zoom's contributory infringement of the Asserted Claims, CYPH has suffered monetary damages and is entitled to a monetary judgment in an amount adequate to compensate for Zoom's past contributory infringement, together with interests and costs, pursuant to 35 U.S.C. § 284.

112. CYPH will continue to suffer damages in the future unless Zoom's infringing activities are enjoined by this Court. Thus, CYPH is entitled to compensation for any continuing infringement until Zoom permanently ceases further contributory infringement.

113. CYPH will be materially and irreparably harmed if Zoom is not enjoined from infringing the Asserted Patents.

114. Zoom's continuing acts of infringement are willful, entitling CYPH to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

**PRAYER FOR RELIEF**

WHEREFORE, CYPH prays for judgment against Defendant, and respectfully requests the following relief:

1. A judgment that Zoom has infringed either directly or indirectly one or more claims of the `625 Patent;

2. A judgment that Zoom has infringed either directly or indirectly one or more claims of the `047 Patent;

3. A judgment that Zoom has infringed either directly or indirectly one or more claims of the `946 Patent;

4. A judgment that Zoom has infringed either directly or indirectly one or more claims of the `070 Patent;

5. A judgment that Zoom has infringed either directly or indirectly one or more claims of the `465 Patent;

6. A judgment that Zoom has infringed either directly or indirectly one or more claims of the `369 Patent;

7. Entry of a permanent injunction enjoining Zoom, its officers, agents, servants, employees, and those persons acting in active concert or participation with all or any of them from further direct and/or indirect infringement of any of the `625 Patent, `047 Patent, `946 Patent, `070 Patent, `465 Patent, and `369 Patent;

8. An award of damages or other monetary relief, including but not limited to, costs and pre- and post-judgment interest, to CYPH in an amount not less than $100,000,000 (One Hundred Million Dollars);

9. A declaration that Zoom's infringement is willful and deliberate and an increase to the award of damages of three times the amount found or assessed by the Court, pursuant to 35 U.S.C. § 284; and

10. Such other and further relief as the Court deems just and appropriate, including but not limited to, a determination that this is an exceptional case pursuant to 35 U.S.C. § 285 and an award of attorneys' fees and costs to CYPH in this action.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial pursuant to Rule 38 of the Federal Rule of Civil Procedure as to all issues in this lawsuit.

Date: November 9, 2021

___________/s/_______________

David E. Moore
Carl I. Brundidge (pro hac vice forthcoming)
Kumiko Kitaoaka (pro hac vice forthcoming)
Brundidge & Stanger, P.C.
1925 Ballenger Avenue, Suite 560
Alexandria, VA  22314
Tel: (703) 684-1470
Fax: (703) 684-1470
david.moore@brundidge-stanger.com
cbrundidge@brundidge-stanger.com
*Attorneys for Plaintiff CYPH*