UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

| | |
|---|---|
| CYPH, INC.,<br><br>Plaintiff,<br><br>v.<br><br>ZOOM VIDEO COMMUNICATIONS INC.,<br><br>Defendants. | Civil Action No. 21-cv-03027-RM-MEH |

**OPPOSITION TO DEFENDANT'S
MOTION TO TRANSFER VENUE UNDER 28 U.S.C. §1404**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ....................................................................................................... 2

ARGUMENT ........................................................................................................................ 6

    I.   APPLICABLE LEGAL STANDARD .................................................................... 6

    II.  TRANSFER TO THE NORTHERN DISTRICT COURT OF CALIFORNIA IS NOT WARRANTED ........................................................................................... 8

        A.  PRIVATE FACTORS WEIGH IN FAVOR OF THIS COURT .............................. 8

            1.  Evidence Can be easily Accessed ..................................................... 8

            2.  Zoom has a Strong Connection to This District .............................. 9

            3.  Plaintiff's Chosen Court Was Dictated by Law ............................. 10

            4.  Witnesses Can Be Easily Obtained ................................................. 11

            5.  Any judgement is Enforceable By This court ............................... 14

        B.  PUBLIC FACTORS WEIGH IN FAVOR OF THIS COURT ............................... 14

            1.  Trial Does Not Involve Multiple Sets of Laws .............................. 14

            2.  Jury in This District Will Have Connection to Case ...................... 14

            3.  This District Has Interests In Hearing This Case ........................... 15

            4.  No State Law Governs in This Action ........................................... 15

CONCLUSION ................................................................................................................... 16

# TABLE OF AUTHORITIES

**CASES**                                                                                                      **PAGE(S)**

*Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir.1991) ........1, 6, 7

*TC Heartland v. Kraft Foods Group Brands LLC*, 137 S. Ct. 1514 (2017) ...............................1, 10

*Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 257, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981)...... 6-8, 11

*Texas E. Transmission Corp. v. Marine Office-Appleton Cox Corp.,* 579 F.2d 561, 567 (10th Cir. 1978) ...................................................................................................................................6

*Wm. A. Smith Contracting v. Travelers Indem. Co.,* 467 F.2d 662, 664 (10th Cir. 1972) ..............6

*Scheidt v. Klein,* 956 F.2d 963, 965 (10th Cir.1992) ......................................................................6

*Fireman's Fund Ins. Co. v. Thyssen Mining Constr. of Can., Ltd.,*
703 F.3d 488, 494 (10th Cir.2012) ................................................................................................7

*Archangel Diamond Corp. v. Lukoil*, 812 F.3d 799, 803 (10th Cir. 2016)......................................7

*Van Dusen* v. *Barrack*, 376 U.S. 612 (1964)...................................................................................7

*Gulf Oil Corp. v. Gilbert,* 330 U.S. 501 (1947)..............................................................................8

**STATUTES**                                                                                                      **PAGE(S)**

28 U.S.C. §1331....................................................................................................................3, 14

28 U.S.C. §1338(a) ...............................................................................................................3, 14

28 U.S.C. §1400(b) ............................................................................................................1, 3, 10

28 U.S.C. § 1404(a) ................................................................................... 1, 2, 6-8, 12, 14-16

35 U.S.C. §271...................................................................................................................3, 10, 14

Plaintiff Cyph, Inc. (individually "Cyph" or "Plaintiff"), by and through the undersigned Counsel, do hereby oppose Defendant Zoom Video Communication, Inc.'s ("Zoom" or "Defendant") Motion to Transfer Venue Under 28 U.S.C. §1404(a).

## PRELIMINARY STATEMENT

The present federal action properly belongs in this Court and should not be transferred under 28 U.S.C. §1404(a) to the Northern District of California in that the Private and Public Interest Factors under *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir.1991) all weigh in favor of this Court, the District Court of Colorado, retaining and deciding this case.

Specifically, Zoom, being the most successful facilitator of remote attendance of meetings and their sole use of cloud-based storage of its records, has not shown in any convincing manner that the interest of justice and the degree of their expected inconvenience in this Court strongly favors transfer to the Northern District of California. Further, Cyph's choice of this forum should be given considerable weight under the 10th Circuit case law regarding §1404(a) since the selection of this Court was proper under 28 U.S.C. § 1400(b), as interpreted by the Supreme Court's opinion in *TC Heartland v. Kraft Foods Group Brands LLC*, 137 S. Ct. 1514 (2017), without contrivance, manipulation or subterfuge.

Simply put, Zoom has made a meritless motion to transfer this case to the Northern District of California when Zoom is well aware of the complete lack of support for its motion. Zoom does not dispute that it has a regular place of business and has a number of employees working in Zoom's facility in this district.[1] Zoom has one of its self-described "Global Offices" in this district

---

[1] During the parties' pre-motion meet and confer, Zoom informed Cyph's legal counsel that Zoom will move to transfer the case based on forum non convenience, and did not state that Zoom will move to dismiss under Fed. R. Civ. P. 12(b)(3).

1

<u>and</u> a substantial part of the events giving rise to Cyph's claims occurred in this district. There is no significant inconvenience to Zoom, nor any of the witnesses who may be called to testify for Zoom, nor its access to evidence, if all proceedings and trial are held in this Court. Certainly Zoom has not shown that it would be subject to oppressive and vexation litigation in this District. Therefore, this case should not be transferred to the Northern District of California.

A crucial point to note is that Zoom is attempting to mislead and manipulate this Court by describing its Denver Colorado Global Office as a "sales-focused satellite office (*see* pg. 1, lines 8-9 of Zoom's Motion)," when such could not be further from the truth. Eric S. Yuan, Founder and CEO of Zoom said "[i]nvesting in our people is a key initiative to our growth strategy. We chose to open our new office in Denver because we see this as one of the next hot innovation centers in the US." (*see* Ex. 1: Zoom Expanding With New Denver Office, GlobeNews Wire, Feb 22, 2016).

Zoom has not shown that Plaintiff's choice of forum should be disturbed since the balance of Public and Private Interest Factors weigh strongly in favor of this case staying in this Court. Thus, the present federal action properly belongs in this Court and should not be transferred under 28 U.S.C. §1404(a) to the Northern District of California. Therefore, Zoom's motion for transfer should be denied.

## STATEMENT OF FACTS

Cyph is a small company incorporated in the state of Delaware. Cyph's principal place of business is located at 2093A Philadelphia Pike, Suite 152, Claymont, DE 19703. Zoom is a publicly traded video communications and online media company, organized under the laws of Delaware, with its head office at 55 Almaden Boulevard – 6th floor, San Jose, California, 95113 and an official Global Office located at 7601 Technology Way, Suite 300, Denver, Colorado

80237. (*see* Ex. 2: Zoom website "Contact Us" page). Zoom provides a video communications platform to anyone with internet access, around the world. Since the beginning of coronavirus pandemic in January 2020, Zoom's subscription and sales volume spiked to produce 2500% growth of net income in 2020. Zoom's corporation value has soared to pass that of ExxonMobil.

The present case is a civil action to halt Zoom's infringement of Cyph's End-To-End encryption ("E2EE") solution as set forth in the claims of U.S. Patent No. 9,948,625 B2 (the "'625 Patent"), U.S. Patent No. 10,701,047 (the "'047 Patent"), U.S. Patent No. 10,020,946 (the "'946 Patent"), U.S. Patent No. 9,794,070 (the "'070 Patent"), U.S. Patent No. 10,003,465 (the "'465 Patent"), and U.S. Patent No. 9,906,369 (the "'369 Patent") (collectively referred to as the "Asserted Patents") pursuant to 35 U.S.C. §271 and to recover damages, attorney's fees, and costs.

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§1331 and 1338(a) and personal jurisdiction over Zoom, by virtue of both general and specific personal jurisdiction. Also, venue is proper in this district under 28 U.S.C. § 1400(b). First, Zoom has an official Global Office in this jurisdiction at 7601 Technology Way, Suite 300, Denver, Colorado 80237. Zoom's continuous and systematic activities within this jurisdiction gives rise to the required level of contact for general and personal jurisdiction. Second, Zoom's activities are purposefully directed to encrypting communications of video communication platform users in this district, thereby infringing Cyph's E2EE solution as set forth in the claims of the Asserted Patents. Zoom's activities are causing irreparable harm to Cyph in this district, constituting a substantial part of the cause of this action.

Zoom is not prejudiced in any way being sued in this district. Zoom, Cyph, and their expected witnesses, will not be inconvenienced in any manner in this district that would be imbalanced or improper. Denver lies 1274 miles east to San Jose, California and 1721 miles west

3

to Claymont, Delaware, where Cyph is located. Thus, the distances for both parties and their witnesses to this court are relatively equal. Therefore, neither party will bear an imbalance of inconvenience in traveling to this district should the need arise for the witnesses to make personal appearances in this Court.

Zoom has nearly 5000 employees worldwide with more than 700 of said employees in China and another approximately 700 of said employees in Denver Colorado.

The 700 employees in China are part of Zoom's research and development team who develop and maintain Zoom's various products and services. In Zoom's January 2020 filings to the U.S. Securities and Exchange Commission, Zoom stated that it has a "high concentration of research and development personnel in China," that its China operations presented a "strategic advantage" because it allowed the company to "invest more in increasing our product capabilities in an efficient manner" and that relocating its product development team outside of China would result in "higher operating expenses." (*see* Ex. 3: "US Charges against Zoom Executive Highlights Tech's China Problem", by B. Allen-Ebrahimian, Axios, Dec 2020; "A Quick Look at the Confidentiality of Zoom Meetings" by B. Marczak, et al., Move Fast and Roll Your Own Crypto, April 2020).

The employees located in China, as admitted by Zoom, can take regularly scheduled flights from China to Denver should the need arise for them to make personal appearances in this Court (*see* ¶ 9 Jones Declaration). The inconvenience of air travel applies equally to all witnesses and parties. However, Zoom apparently has accepted such inconveniences with respect to its employees located in China since their location in China is an official part of Zoom's corporate strategy. (*see* Ex. 3).

4

Importantly, Zoom describes the functions being performed by its nearly 700 employees in its Denver Global office as including engineering services the same as Zoom's San Jose office. (*see* Ex. 4, page 2: Zippia.com & Zoom websites). In fact Zoom's Global Office in Denver has various Engineering jobs including Manager Security Product Analyst-Security Operations, Threat Detection Analyst and Staff Offensive Security Engineer (Backend) and many other Engineering jobs. (*see* Ex. 4, pages 4-30). Thus, a critical part of Zoom's product and security software development team is located in Denver Colorado, not San Jose California.

Critical to the resolution of this action is Zoom's E2EE technology acquisition. In an effort to boost security on its platform, Zoom acquired Keybase, Inc. ("Keybase"), which is located in New York. Keybase was a provider of secure messaging and file-sharing services. Keybase was founded in 2014 by Chris Coyne and Maxwell Krohn. Prior to its purchase by Zoom, Keybase implemented a network that used Plaintiff's patented E2EE solution without Cyph's permission. Zoom adopted the infringing Keybase solution.

Further, upon the acquisition of Keybase, Zoom hired Keybase's team of security and encryption engineers to accelerate Zoom's implementation of E2EE. (*see* Ex 5: "Zoom Buys Keybase to Boost Encryption Capabilities," by G. Narcici, www.crn.com, May 2020). The New York based Keybase team headed by Maxwell Krohn, who serves as Head of Security Engineering at Zoom, reports directly to Zoom's CEO Eric Yuan. (*See* Ex. 5 and Ex. 6: RSA Conference 2021 brochure & theorg.com website). Thus, yet another critical part of Zoom's product and security software development team is located in New York city, not San Jose California.

Zoom was informed of its infringement of the Asserted Patents at least upon the receipt of Cyph's October 28, 2020 letter "Re.: U.S. Patents Owned by Cyph, Inc." Discussions were held among the parties in an attempt to resolve these issues. However, no agreement was reached, and

Zoom continued its infringing activities. Therefore, this action was filed to halt Zoom's infringement of Cyph's E2EE solution as claimed in the Asserted Patents and to recover damages, attorney's fees, and costs for the unauthorized infringement.

## **ARGUMENT**

### I.  APPLICABLE LEGAL STANDARD

A motion to transfer to a more convenient forum is governed by 28 U.S.C. § 1404(a), which provides: "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought. Section 1404(a) affords the district court broad discretion to adjudicate motions to transfer based upon a case-by-case review of convenience and fairness." *Chrysler Credit Corp. v. Country Chrysler, Inc.,* 928 F.2d 1509, 1516 (10th Cir.1991). The party moving to transfer a case pursuant to § 1404(a) bears the burden of establishing that the existing forum is inconvenient. *Texas E. Transmission Corp. v. Marine Office-Appleton Cox Corp.,*579 F.2d 561, 567 (10th Cir. 1978); *Wm. A. Smith Contracting v. Travelers Indem. Co.,*467 F.2d 662, 664 (10th Cir. 1972). *Chrysler Credit Corp. v. Country Chrysler*, 928 F.2d 1509, 1515 (10th Cir. 1991).

Importantly, the plaintiff's choice of forum should rarely be disturbed unless the balance weighs strongly in favor of the movant. *Scheidt v. Klein,* 956 F.2d 963, 965 (10th Cir.1992). The party seeking to transfer the case has the burden of proving that the existing forum is inconvenient. *Id.*

*Forum non conveniens* is a discretionary power that allows courts to dismiss a case where another court, or forum, is much better suited to hear the case. "Where the court has considered all relevant public and private interest factors, and where its balancing of these factors is reasonable, its decision deserves substantial deference." *Piper Aircraft Co. v. Reyno,*454 U.S. 235, 257, 102

S.Ct. 252, 70 L.Ed.2d 419 (1981); *Fireman's Fund Ins. Co. v. Thyssen Mining Constr. of Can., Ltd.,* 703 F.3d 488, 494 (10th Cir.2012) (citing *Piper Aircraft,* 454 U.S. at 257, 102 S.Ct. 252). *Archangel Diamond Corp. v. Lukoil*, 812 F.3d 799, 803 (10th Cir. 2016).

*Forum non conveniens* dismissals and transfers between federal courts pursuant to 28 U.S.C. § 1404(a) are similar but not the same. Transfers between federal courts pursuant to 28 U.S.C. § 1404(a) were construed in *Van Dusen* v. *Barrack*, 376 U.S. 612 (1965) as precluding a transfer if it resulted in a change in the applicable law. 28 U.S.C. § 1404(a) was enacted to permit change of venue between federal courts, but was drafted in accordance with the doctrine of *forum non conveniens.* Thus, the same or similar factors must be considered in *Forum non conveniens* dismissals and transfers between federal courts pursuant to 28 U.S.C. § 1404(a). *Van Dusen* v. *Barrack, supra*, distinguished. pp. 253-254. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 236 (1981).

The court should consider the following factors in determining whether to transfer a case pursuant to 28 U.S.C. § 1404(a): the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and, all other considerations of a practical nature that make a trial easy, expeditious and economical. *Chrysler Credit Corp.,* 928 F.2d at 1516.

"To guide trial court's discretion, the Court provided a list of "private interest factors" affecting the convenience of the litigants, and a list of "public interest factors" affecting the

convenience of the forum." *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501 (1947), *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981).

The Private Interest Factors include (a) ease of access to evidence, (b) interest of the two parties in their connections with the respective forums, (c) the plaintiff's chosen court would be burdensome to the defendant, (d) ease of obtaining witnesses and (e) enforceability of judgment and the Public Interest Factors include (a) whether the trial would involve multiple sets of laws, (b) having juries who may have a connection to the case, (c) local interest in having local interests heard at home and (d) having the trial in a place where state laws govern. *Id*.

The analysis below shall be conducted using the Private and Public Interest Factors noted above.

  **II.**  **TRANSFER TO THE NORTHERN DISTRICT COURT OF CALIFORNIA IS NOT WARRANTED**

The present federal action properly belongs in this Court and should not be transferred under 28 U.S.C. §1404(a) to the Northern District of California. The Private and Public Interest Factors all weigh in favor of this Court, the District Court of Colorado, retaining and deciding this case.

  **A.**  **PRIVATE INTEREST FACTORS WEIGH IN FAVOR OF THIS COURT**

    **1.**  **Evidence Can be easily Accessed**

Zoom has admitted that its records, some of which may serve as evidence in this action, are stored in various cloud storage services. (*see* ¶¶ 18-20 Rao Declaration). These cloud storage services, which include for example NetSuite, a subsidiary of Oracle Corporation Oracle, are easily accessible from any computer or mobile device anywhere on the globe including this District. The current Federal Rules of Civil Procedure ("Fed. R. Civ. P.") regarding discovery of Electronically Stored Information ("ESI") and this Court's Guidelines Addressing the Discovery of ESI are more

than adequate to address this issue and not inconvenience Zoom in its ease of access to said ESI, nor interfere with Zoom's required productions responsive to discovery requests and to formulate its defense for trial.

Zoom simply needs to produce any requested ESI in a form the parties agree, whether by disk, flash drive, storage transfer or the like, to Counsel for Cyph responsive to discovery requests without the need for travel to this District. Further, Counsel for Zoom (i.e. Timothy C. Saulsbury, Esq.) has his office in San Francisco and at said location Counsel for Zoom can easily access witnesses for Zoom and access, inspect and review any ESI in his client's office in San Jose or Counsel's Office in San Francisco to meet Zoom's required productions responsive to discovery requests and to formulate its defense for trial without the need to travel to this District. For trial, Counsel for Zoom can easily prepare the discovered and relevant ESI to be instantly accessible from portable storage devices or cloud storage networks in this District.

Thus, Zoom has not shown in any convincing manner that its access to evidence would be inconvenienced by a suit in this Court. Therefore, this factor does not weigh in favor of Zoom's request for transfer.

### 2.  Zoom has a Strong Connection to This District

Zoom has a strong connection to this District. In fact Eric S. Yuan, Founder and CEO of Zoom said "[i]nvesting in our people is a key initiative to our growth strategy. We chose to open our new office in Denver because we see this as one of the next hot innovation centers in the US." (*see* Ex. 1). Further, Zoom has announced to the world that the Denver Colorado office is one of its limited number of Global Offices, not some special purpose, back-office operation. (*see* Ex. 2).

Zoom's corporate posture is entirely contradicted by Zoom's false allegations in this action that the Denver Colorado Global Office is a "sales-focused satellite office." (*see* pg. 1, lines 8-9

of Zoom's Motion). Zoom is attempting to mislead and manipulate this Court regarding its strong ties to this District. In any event if "Zoom's Denver office focuses on enterprise sales" as alleged in ¶ 11 of the Rao Declaration, then Zoom's Denver office is conducting systematic and regular and continuous acts of selling and offering for sell Cyph's patented technology without Cyph's permission in violation of 35 U.S.C. §271. This is further evidence of Zoom's strong connection to this District.

Thus, Zoom has not shown in any convincing manner that it has no strong connection to this District. Therefore, this factor does not weigh in favor of Zoom's request for transfer.

### 3. Plaintiff's Chosen Court Was Dictated by Law

Cyph's choice of this forum should be given considerable weight since the selection of this Court was dictated by law, namely 28 U.S.C. § 1400(b), as interpreted by the Supreme Court's opinion in *TC Heartland v. Kraft Foods Group Brands LLC*, 137 S. Ct. 1514 (2017). Cyph selected this District without contrivance, manipulation or subterfuge and certainly did not seek to somehow wrestle Zoom into an inappropriate district and court.

Zoom complains that "plaintiff's choice of forum is provided even less deference where, as here, the plaintiff does not reside in the district." Defendant appears to completely misunderstand the patent venue statute under 28 U.S.C. § 1400(b). The plaintiff in a patent infringement action cannot, without concern, file suit wherever the Defendant can be found. "§1400(b) is the sole and exclusive provision controlling venue in patent infringement actions" *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1519 (2017).

Further, more often than not, as in this situation, the Plaintiff does not reside, or have connections, in the venue dictated by the patent venue statute. The patent venue statute was intentionally drafted to provide home court advantage to the corporate infringer. Thus, the

selection by Cyph of one of the statutorily defined home courts available to Zoom for patent infringement actions should be given considerable weight and not disturbed.

"[A] plaintiff's choice of forum should rarely be disturbed. However, when an alternative forum has jurisdiction to hear the case, and when trial in the chosen forum would "establish . . . oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience," or when the "chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems," the court may, in the exercise of its sound discretion, dismiss the case. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981). Zoom has not alleged, nor is it possible for Zoom to be subjected to, oppressiveness and vexation litigation in this District. *Id*. In fact the District of Colorado is one of the few districts that have promulgated special rules for the conduct of Patent Proceedings (*see* D.C.COLO.LPtR 1-17). Further, Zoom has not alleged that it would be subjected to any administrative or legal problems of any significance that are unique to this Court that would prevent the exercise of justice. *Id.*

Thus, Zoom has not shown in any convincing manner that Cyph's choice of this forum should be disturbed. Therefore, this factor does not weigh in favor of Zoom's request for transfer.

### 4. Witnesses Can Be Easily Obtained

Access to the witnesses for Zoom can be easily obtained in this District. As noted by Counsel for Zoom there are numerous flights between the Denver Airport and countless cities in the U.S. and around the world including cities in China. (*see* ¶ 9 Jones Declaration). Thus, outside of trial, in the rare instance where the presence of witnesses for both the Plaintiff and Defendant are required in this Court, all witnesses and Counsel for Plaintiff and Defendant would share in the inconvenience of a flight to the Denver Airport. If transfer to the Northern District of California is granted, which Plaintiff submits should not be granted, the only party to be inconvenienced by

11

a flight to the San Francisco airport would be Plaintiff's witnesses and Plaintiff's Counsel. Plaintiff submits that this would be an inappropriate shift of the entire burden of the inconvenience of this action to Plaintiff and such a shift would not be in the interest of justice. Specifically such a shift would be in violation of 28 U.S.C. § 1404(a), which provides that transfer is possible "[f]or the convenience of the parties and witnesses, in the interest of justice.

It is noted that depositions of witnesses and attendance at court hearings over the past two years under COVID restrictions, in numerous courts and countless matters, have routinely been conducted using the teleconferencing, telecommuting and distance education services provided by the system and network constructed by Zoom. Thus, neither of the parties and their witnesses would be inconvenienced by travel if current COVID practices continue and are followed.

Further, half of the witnesses as admitted by Zoom as being in the Northern District are administrators (*e.g.*, Shane Crehan – Chief Accounting Officer) and of minimal importance to the threshold questions of claim construction, infringement and liability. At most, these administrators would apparently provide testimony relevant to the issue of damages or willfulness – questions apart from the threshold questions of claim construction, infringement and liability.

In contrast, relevant engineers with critical technical testimony directed to the questions of claim construction, infringement and liability are admitted by Zoom as not being located in the Northern District of California, but rather in China. (*see* ¶ 16 Rao Declaration and ¶ 9 Jones Declaration). As per Zoom's public statement 700 of its employees in China are part of Zoom's research and development team who develop and maintain Zoom's various products and services. Thus, relevant testimony may be obtained from Zoom's product and security software development teams in China, not San Jose California.

Also, Zoom describes the functions being performed by its 700 employees in its Denver Global Office as including engineering functions the same as Zoom's San Jose office. The Denver Global Office employs numerous Engineers who are exceedingly technically competent with Zoom's products and security software. (*see* Ex. 4, pages 4-30). Thus, relevant testimony may be obtained from Zoom's product and security software development teams in Denver, not San Jose California. Also, relevant testimony on the "enterprise sales" being conducted by Zoom in this district by Zoom's Denver Global Office (*see* ¶ 11 Rao Declaration) may be obtained from employees in the Denver Global Office.

Zoom acquired Keybase which is located in New York. Keybase was founded by Chris Coyne and Maxwell Krohn. Prior to its purchase by Zoom, Keybase implemented a network that used Plaintiff's patented E2EE solution without Cyph's permission. Zoom adopted the infringing Keybase solution. Upon acquisition of Keybase, Zoom hired Keybase's team of security and encryption engineers to accelerate Zoom's implementation of E2EE that infringes Plaintiff's Asserted Patents. The New York based Keybase team headed by Mr. Krohn, who serves as Head of Security Engineering at Zoom, reports directly to Zoom's CEO Eric Yuan. Thus, relevant testimony may be obtained from Mr. Krohn and his New York based Keybase team in New York, not San Jose California. (*see* Exs. 5 and 6).

It should be noted that at no point has Zoom proffered that any of its proposed witnesses would not agree to provide testimony in this District whether by deposition or at trial.

Thus, Zoom has not shown in any convincing manner that its ease of obtaining witnesses would be inconvenienced by a suit in this Court. In fact based on Plaintiff's independent research and Zoom's admissions, the majority of the important witnesses with relevant testimony in this

action do not reside in the Northern District of California. Therefore, this factor does not weigh in favor of Zoom's request for transfer.

### 5. Any judgement is Enforceable By This court

Any judgement by this Court is enforceable by this Court. There has been no dispute by Zoom that this Court lacks subject matter jurisdiction over this action pursuant to 28 U.S.C. §§1331 and 1338(a) and personal jurisdiction over Zoom, by virtue of both general and specific personal jurisdiction. Therefore, this factor does not weigh in favor of Zoom's request for transfer.

Thus, as is clear from the above the present federal action properly belongs in this Court and should not be transferred under 28 U.S.C. §1404(a) to the Northern District of California. The Private Interest Factors all weigh in favor of this Court, the District Court of Colorado, retaining and deciding this case. Even Zoom admitted in its motion that five of the nine factors it identified as being required for consideration of a motion under 28 U.S.C. § 1404(a) do not weigh in its favor. Zoom argues that of the nine factors it considered, the strongest factor in its favor is of "accessibility of witnesses and sources of proof," which as shown above do not in fact weigh in its favor. Zoom's allegations regarding this issue are misleading and manipulative.

Therefore, the Private Interest Factors all weigh in favor of this Court, the District Court of Colorado, retaining and deciding this case. Accordingly, Defendant's motion should be denied.

### B.     PUBLIC FACTORS WEIGH IN FAVOR OF THIS COURT

#### 1. Trial Does Not Involve Multiple Sets of Laws

This trial will not involve multiple sets of laws. The primary law applicable to this action is 35 U.S.C. §271. Therefore, this factor does not weigh in favor of Zoom's request for transfer.

#### 2. Jury in This District Will Have Connection to Case

The jury in this District will have a connection to this case since Zoom is one of the companies identified locally as adding to the burgeoning tech industry in Denver. Therefore, this factor does not weigh in favor of Zoom's request for transfer.

### 3.  This District Has Interests In Hearing This Case

This District has interests in hearing this case since it will have an effect on Zoom, one of the companies identified locally as adding to the burgeoning tech industry in Denver. Therefore, this factor does not weigh in favor of Zoom's request for transfer.

### 4.  No State Laws Govern in this Action

No Colorado state law is involved in this action nor is any California state law involved. Therefore, this factor is neutral.

In its motion Zoom referenced statistics of the respective Districts concerning the median time from filing to trial. (see ¶ 10 Jones Declaration & Ex. H). Specifically, Counsel for Zoom notes that "[t]he median time to trial in civil cases in the Northern District for the 12-month period ending June 30, 2021 was 26.9 months, whereas the median time to trial over the same period for civil cases in this District was 32.8 months" - a difference of less than six months. Counsel for Zoom alleges that due to this less than 6-month difference "[t]his factor weighs slightly in favor of transfer." This is an incredibly subjective and biased allegation. Furthermore, the proffered statistics are directed to *all civil matters* and do not address median times to trial for patent matters. Accordingly, the proffered statistics are properly viewed as irrelevant, or at best, self-serving hyperbole padded with questionable statistical underpinnings. Thus, a more appropriate rating for this factor is neutral.

As is clear from the above the present federal action properly belongs in this Court and should not be transferred under 28 U.S.C. §1404(a) to the Northern District of California. The

Public Interest Factors all weigh in favor of this Court. Thus, the District Court of Colorado should retain and decide this case and Defendant's motion should be denied.

## CONCLUSION

The present federal action properly belongs in this Court and should not be transferred under 28 U.S.C. §1404(a) to the Northern District of California.

Therefore, Plaintiff respectfully requests that the Court deny Defendants Motion under 28 U.S.C. §1404(a).

Dated: December 27, 2021

                                     By:     */s/Carl I. Brundidge*
                                                        Carl I. Brundidge
                                                        David E. Moore
                                                        **BRUNDIDGE & STANGER, P.C.**
                                                        1925 Ballenger Avenue, Suite 560
                                                        Alexandria, VA 22314
                                                        703-684-1470 (Office)
                                                        703-684-1470 (Fax)
                                                        david.moore@brundidge-stanger.com
                                                        cbrundidge@brundidge-stanger.com

                                                        *Attorneys for Cyph, Inc.*